E-FILED
Monday, 10 August, 2015  12:48:37 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DOUGLAS OAKS, B43119, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.:  14-4026 |
| | ) | |
| TARRY WILLIAMS, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>ORDER</u>

This matter is before the Court on Petitioner, Douglas Oaks' ("Oaks"), Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, Respondent's Answer, and Petitioner's Traverse. For the reasons set forth below, the Petition [2] is DENIED.

## Background

Petitioner is an inmate at Stateville Correctional Center in Joliet, Illinois under the custody of Warden Tarry Williams. Following a jury trial, Oaks was convicted of two counts of first-degree murder of his girlfriend's three-year-old son and aggravated battery of a child.  He was sentenced to death, but his sentence was commuted to natural life in January 2003.

### Direct Appeal

Oaks appealed directly to the Illinois Supreme Court, raising 13 claims of error: (1) the indictments were duplicitous; (2) his statement was involuntary and should have been suppressed; (3) evidence of the child's prior injuries should not have been admitted; (4) insufficient evidence of knowing murder; (5) expert testimony that the child's injuries could not have been accidental should not have been admitted; (6) the instructions

1

regarding involuntary manslaughter were erroneous; (7) his waiver of a jury at the sentencing phases of his capital trial was unknowing and involuntary; (8) he was ineligible for a death sentence; (9) the statutory aggravating factor of "brutal or heinous" was unconstitutionally vague; (10) Dr. Chapman's testimony regarding his extreme emotional disturbance should not have been rejected; (11) he was denied the opportunity to make a statement in allocution; (12) the Illinois Death Penalty statute was unconstitutional; and (13) his felony murder conviction should be vacated in light of his conviction for knowing murder. On February 15, 1996, the Illinois Supreme Court vacated the conviction for felony murder but otherwise affirmed his conviction and sentence. A Petition for Writ of Certiorari was denied on October 7, 1996.

**Post-Conviction Proceedings**

On December 22, 1995, Petitioner filed a *pro se* post-conviction petition for relief pursuant to 725 ILCS 5/122-1. This Petition argued: (1) trial counsel was ineffective for failing to present expert testimony that the victim's injuries could have been caused by less force than indicated by the state witnesses; (2) he was denied his counsel of choice; and (3) appellate counsel was ineffective for failing to raise that issue.

Counsel then filed an amended post-conviction petition arguing: (1) confidential treatment records were relied on at sentencing; (2) the trial court erroneously excluded the results of a polygraph; (3) his confession was involuntary; (4) witnesses should not have been allowed to testify that the victim's injuries were intentional; (5) his right to confrontation was infringed; (6) the prosecutor made inappropriate comments in closing arguments; (7) trial counsel was biased; (8) trial counsel was ineffective for failing to present evidence in mitigation; (9) he was denied a fair trial due to incomplete jury

2

instructions and other crimes evidence: (10) he was not allowed to present a statement in allocution; (11) the trial court failed to hold a competency hearing; (12) death was not the appropriate penalty; (13) the Illinois Death Penalty statute was unconstitutional; (14) trial counsel was ineffective for failing to seek appointment of a second attorney and mitigation expert; (15) he was denied a fair trial because the judge suggested to jurors that child abuse was repulsive; and (16) he was prejudiced by the cumulative effect of these errors.  The trial court dismissed the Petition without a hearing, finding that his sentencing claims were moot as a result of the commutation.

Oaks appealed, claiming:   (1) the trial court erred in dismissing his sentencing-related claims as moot; (2) the prosecutor erred in arguing that his girlfriend did not cause the child's injuries; and (3) counsel was ineffective for failing to raise this claim on direct appeal.  The Illinois Appellate Court reversed the finding that the sentencing claims were moot, remanded those claims for further consideration, and affirmed the dismissal of all other claims.  Both Oaks and the State filed Petitions for Leave to Appeal to the Illinois Supreme Court, which were both denied on September 27, 2006.

On remand, testimony was received from Oaks' trial counsel and family members.  The court concluded that while counsel was deficient for failing to investigate Petitioner's abusive childhood and advising him not to present evidence of this, there was no reasonable probability that such evidence would have made a difference in the outcome of the case.

Oaks sought leave to bring a supplemental post-conviction petition to argue: (1) newly discovered medical evidence established his actual innocence; (2) he was denied his counsel of choice; and (3) appellate counsel was ineffective for failing to raise this

issue.  Leave to file the supplemental petition was denied, and Petitioner appealed, arguing that (1) trial counsel was ineffective at sentencing, and (2) the trial court erred in denying leave to file the supplemental petition.  The Illinois Appellate Court affirmed, expressly overruling its prior decision in holding that the claim of ineffective assistance at sentencing was moot in light of the commutation and that there was no error in denying leave to file supplemental claims when Oaks could bring the claims as a successive post-conviction petition under 725 ILCS 5/122-1(f).  Petitioner's PLA to the Illinois Supreme Court was denied on January 30, 2013.

### Federal Habeas Petition

On January 27, 2014, Petitioner filed the instant Petition in the Northern District of Illinois and it was subsequently transferred to this Court. Petitioner argues six claims: (1) the trial court denied his constitutional right to choice of counsel; (2) appellate counsel was ineffective for failing to raise his choice of counsel claim on direct appeal; (3) his conviction violates due process because it is predicated on unreliable scientific testimony regarding the force necessary to cause fatal head trauma; (4) he was denied his constitutional right to fair trial based on the prosecutor's argument in closing that his girlfriend did not cause her son's injuries; (5) appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to the prosecutor's remarks; and (6) trial counsel was ineffective at sentencing for failing to investigate and present mitigating evidence of his abusive childhood. The matter is fully briefed, and this Order follows.

**Discussion**

When presented with a petition for writ of Habeas Corpus pursuant to 28 U.S.C. §2254, a district court must first consider whether the petitioner has exhausted all available state remedies. If the district court determines that the petitioner has not given the state courts a "full and fair opportunity to review" the claims in its own judicial process prior to petitioning for federal review, the petition is barred for failure to exhaust state remedies and the district court cannot address the merits of the constitutional claims.  Dressler v. McCaughtry, 238 F.3d 908, 912 (7th Cir. 2001) (citations omitted); *see also* 28 U.S.C. § 2254(b).

In order for exhaustion to occur, the petitioner must assert each of the federal claims to be brought in his habeas corpus petition at each and every level in the state court system. Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir. 2004) (citations omitted). This can be done on direct appeal or in post-conviction proceedings, but the petitioner must present the state judiciary with "both the operative facts and the legal principles that control each claim." Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007) (citations omitted).  Additionally, "an applicant shall not be deemed to have exhausted the remedies available to the courts of the State…if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Procedural default occurs when the petitioner had a claim that could have been presented to the state court but was not, and cannot, at the time the federal petition is filed, be presented to the state court. Lemons v. O'Sullivan, 54 F.3d 357, 360 (7th Cir. 1995) (citation omitted). This can happen in one of two ways. First, procedural default can occur when a petitioner fails to pursue each appeal required by state law, or when he

did not assert in state court the claims raised in the federal habeas corpus petition.

Jenkins v. Gramley, 8 F.3d 505, 507-508 (7th Cir. 1993); Stone v. Farley, 86 F.3d 712, 716 (7th Cir. 1996). The second way procedural default may occur is when a state court decides the case on "an independent and adequate" state law ground, regardless of whether that ground is substantive or procedural. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991). A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010) citing U.S. v. ex rel. Bell v. Pierson, 267 F.3d 544, 556 (7th Cir. 2001). A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied. Id. citing Franklin v. Gilmore, 188 F.3d 877, 882 (7th Cir. 1999).

Federal courts will not review claims that are procedurally defaulted unless the petitioner can demonstrate "cause and prejudice" to excuse the fault. Dretke v. Haley, 541 U.S. 386, 388 (2003). Cause sufficient to excuse procedural default is "some objective factor external to the defense" which prohibits him from pursuing his constitutional claim in state court. Murray v. Carrier, 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.29 397 (1986). It is also possible to get review of procedurally defaulted claims in federal courts if the petitioner can demonstrate a sufficient probability that the failure to review would result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). A fundamental miscarriage of justice occurs when a petitioner establishes "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 478.

If a claim has not been barred for failure to exhaust or for procedural default, the district courts must apply a strict analysis. 28 U.S.C. §2254(d) bars relitigation of any claim previously "adjudicated on its merits" in state court unless the decision of the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of facts in light of the evidence presented in the State court proceedings.

28 U.S.C. 2254(d). *See also* Willimas v. Taylor, 529 U.S. 362, 402-404 (2000); Harrington v. Richter, 131 S.Ct.770, 784 (2011).

Subsection (d)(1) instructs that Supreme Court precedent governs legal questions. Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059 (1997). In resolving mixed questions of law and fact, relief is unavailable unless "the state's decision reflects an unreasonable application of the law," meaning federal courts are to have a hands-off attitude unless the state court judgment is premised on unreasonable error. Id. at 870 (internal quotation marks omitted). A responsible, thoughtful decision that is made after a full opportunity to litigate suffices, "even if it is wrong." Id. at 871, 876-77. Subsection (d)(2) pertains to a decision constituting an unreasonable determination of facts, and, according to 28 U.S.C. § 2254(e)(1), factual issues are presumed to be correctly resolved. A petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Respondent first argues that Oaks has not properly exhausted his state remedies with respect to the first three claims raised in the Petition and that those claims should be deemed procedurally defaulted.  The Court notes that Petitioner's choice of counsel claim

was not raised on direct appeal, as required by Illinois law because it was based on facts

appearing in the record, and is therefore deemed procedurally barred in federal habeas

corpus proceedings.  Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).  He failed to

correct this procedural misstep in his post-conviction process, as he abandoned the claim

in his amended petition and thereby failed to properly present it to the trial court.

Petitioners are required to present each issue through one complete round of state court

review, and the failure to do so results in procedural default.  O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999); Smith v. Gaetz, 565 F.3d 346, 352 (7th Cir. 2009).

Petitioner argues that his default should be excused because his appellate counsel

was ineffective for failing to raise his counsel of choice claim, which is also his second

claim in this Petition.  While ineffective assistance of counsel could provide cause to

excuse the default of the ineffective assistance of trial counsel claim, ineffective

assistance of appellate counsel is an independent constitutional claim that must have been

exhausted in order to qualify as cause.  Lemons, 54 F.3d at 357.  Oaks attempts to excuse

his appellate counsel's ineffectiveness by passing the blame to post-conviction counsel.

However, the Seventh Circuit has held that there is no constitutional right to effective

assistance of counsel in post-conviction proceedings, so that claim cannot serve as cause

to excuse procedural default of the ineffective assistance of appellate counsel claim.

Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996); Coleman, 501 U.S. at 752-53.

Petitioner's reliance on Martinez v. Ryan, 132 S.Ct. 1309 (2012), is misplaced, as that

decision offered a narrow exception to allow ineffective assistance of post-conviction

counsel to constitute cause to excuse failure to raise an ineffective assistance of trial

counsel claim for the first time in an initial post-conviction proceeding where the claim

was properly raised for the first time on post-conviction.  Accordingly, Petitioner has failed to demonstrate sufficient cause to excuse his procedural default of his first two claims.

Even assuming that Oaks could establish cause, he must still demonstrate actual prejudice – that is, that the denial of his counsel of choice and failure to raise this issue on direct appeal or amended post-conviction petition placed him at an actual and substantial disadvantage.  Petitioner's right to counsel of his choice extends to the extent that counsel is retained at his own expense or is willing to represent him pro bono; he cannot insist that the court appoint the counsel of his choosing to represent him at the court's expense.  United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006).  As this claim is without merit, appellate counsel was not ineffective for failing to raise it.  Moreover, Appellate counsel raised 13 claims of error, while post-conviction counsel presented 16 arguments for relief.  There is no basis for concluding that the defaulted claims were obviously stronger than the many claims that were raised or that counsels' decisions were not matters of strategy.

Oaks concedes that his third claim, that his conviction was based on unreliable scientific evidence, was not presented for decision to the state courts.  Although he attempted to add a similar claim attacking his sentence to death or natural life in prison (rather than his conviction for first degree murder) in his amended petition, leave was denied, and Oaks was advised that the proper avenue to proceed with his claim would be to bring a successive post-conviction petition; he did not pursue this option.  State courts may refuse to review a claim if it was "not presented in the right court, in the right way, and at the right time – as state rules define those courts, ways, and times."  Johnson v.

9

<u>Loftus</u>, 518 F.3d 453, 458 (7th Cir. 2008). Having failed to properly assert this claim

during his state process, he has procedurally defaulted it because it was not presented for

one complete round of state review.  <u>Boerckel</u>, 526 U.S. at 845.  Oaks apparently agrees

that this claim is not properly before the Court as he indicates that he is withdrawing this

claim in his traverse.

      The fourth claim asserted in the Petition is that he was denied a fair trial when the

prosecutor commented in closing argument that there was no evidence showing that his

girlfriend caused her son's injuries when there was a journal allegedly written by the

girlfriend stating that she "beat his butt" for crying.  He also claims that trial counsel was

ineffective for failing to raise this issue and that appellate counsel was ineffective for

failing to raise trial counsel's ineffectiveness (Claim 5).   In addressing this claim on

appeal, the Illinois Appellate Court found:

> Defendant further contends that . . .the prosecutor
> improperly argued in his rebuttal that no one other than
> defendant could have killed Jerry.  Defendant claims that
> defense counsel was ineffective for failing to object to the
> argument, and appellate counsel was ineffective for failing
> to raise an issue of ineffective assistance of counsel on
> direct appeal.
>
> To show ineffective assistance of counsel, a defendant
> must demonstrate both that defense counsel's performance
> was objectively deficient and that, but for counsel's
> deficient performance, the result of the proceeding would
> have been different.  <u>People v. Coleman</u>, 183 Ill.2d 366,
> 701 N.E.2d 1063 (1998) (citing <u>Strickland v. Washington</u>,
> 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984)).
> The <u>Strickland</u> test applies to claims based on both trial and
> appellate counsel's performance.  <u>People v. Boyd</u>, 347
> Ill.App.3d 321, 807 N.E.2d 639 (2004).
>
> The document at issue here was clearly objectionable as
> hearsay.  It is well settled that a letter allegedly written by a
> nontestifying witness is inadmissible as hearsay if offered

to prove the truth of its contents.  People v. Simms, 143
Ill.2d 154, 572 N.E.2d 947 (1991).  Tonya Nelson did not
testify at defendant's trial, and defendant has failed to
show, either in the trial court or on appeal, that the
document would have been admissible as an exception to
the hearsay rule.  Accordingly, we cannot say that trial
counsel provided ineffective assistance by failing to offer
the document into evidence.

Further, the prosecutor's rebuttal statements were clearly
invited by defense counsel's closing argument urging the
jury to consider Tonya as the person who inflicted Jerry's
fatal wounds.  It is well settled that a defendant may not
claim prejudice from a prosecutor's remarks made in
response to the defendant's closing argument.  People v.
Moore, 171 Ill.2d 74, 662 N.E.2d 1215 (1996).
Accordingly, a defendant's postconviction claims of
ineffective assistance of trial and appellate counsel for
failing to take issue with the prosecutor's rebuttal argument
were properly dismissed.

People v. Oaks, No. 3-04-0645 at 5-6 (Ill.App.Ct. Apr. 12, 2006).

Where a claim has been addressed on the merits by the state courts, the scope of

federal review is very narrow.  While Petitioner reargues this claim as if it were subject

to de novo review, that is not standard for federal habeas review in this circumstance.

Oaks has not shown, and cannot show, that the appellate court's review of the claim was

contrary to, or was an unreasonable application of, Supreme Court law. The appellate

court assessed the facts contained in the record regarding the comments and arrived at its

conclusion reasonably, applying clearly established law in the form of Strickland.

Petitioner argues that the decision was contrary to Miller v. Pate, 386 U.S. 1

(1967), which held that the Fourteenth Amendment cannot tolerate a state criminal

conviction obtained by the knowing use of false evidence.  Here, there was no knowing

use of false evidence.  All Oaks can point to is a comment by the prosecutor in rebuttal

that there had been no evidence implicating the victim's mother in his murder, which he

admits was "technically correct."  Even if the journal had been admitted, the vague reference to having "beat his butt" does not promote the reasonable inference that she broke his clavicle, repeatedly punched him in the stomach, threw him across the room with such force as to cause traumatic brain injury, or the other events contributing to the victim's death (some of which conduct Oaks had admitted.)  In light of the evidence presented at trial, the comment was a reasonable inference, and the Court cannot find that this comment infected the trial with unfairness so as to make Oaks' conviction a denial of due process triggering the relief set forth in Miller.

Oaks has likewise failed to demonstrate an unreasonable application of the facts in light of the evidence presented at trial.  Such a decision suffices "even if its wrong." See Lindh, 96 F.3d at 871, 876-77.  Therefore, the Petition is denied with respect to this claim.

Finally, Petitioner argues that trial counsel's performance at sentencing for failing to investigate and offer mitigating evidence.  On review, the circuit court found that trial counsel had been deficient in his investigation of Oaks' childhood abuse and that his performance fell below the level of performance required under Strickland.  However, the circuit court found no basis to conclude that the sentence would have been any different if the trial court had been aware of such information.  In other words, the circuit court concluded that evidence of Oaks' terrible childhood would not have excused or mitigated the trial judge's finding that the 3-year-old was murdered because he wet his pants, qualifying Oaks for a sentence of death or natural life.

Considerable evidence of aggravation was introduced at trial, including the repeated infliction of serious injuries to the child over a period of time, as well as Oaks'

prior acts of violence against the mother of his child and another female acquaintance. The medical experts reviewing the case described the injuries as "massive," repeated blows to the abdomen, a broken collarbone that would have been extremely painful and prevented the child from using his arm, considerable bruising in various stages of healing in 18 areas of his body, retinal hemorrhaging, internal bleeding, brain hemorrhaging, and swelling sufficient to cause the brain to push outside of the child's skull and into his throat.

The evidence in mitigation included testimony from Oaks' siblings and childhood friends that the relationship between his father and mother was physical and violent, with lots of hands-on contact. As a baby, Oaks cried a lot and was repeatedly shaken by his mother or shoved into a closet until he stopped crying. On one occasion, he was thrown against a wall. Petitioner was thrown across the room and kicked for putting toy cars in a fish aquarium. He was left in a high chair in a dirty diaper for 24 hours for refusing to eat his vegetables. There were times when there wasn't any food in the house and his sister would borrow or steal food from neighbors. His mother was an alcoholic who strangled their cat right in front of him because she was angry at his sister for not doing the dishes. His mother would often hit them in the head or back if she was angry and leave them in a dark, unfinished basement, sometimes for days at a time, with only dog or cat food to eat. When he was a teenager, his mother hit him in the head or shoulder with a hammer and burned him with a cigarette. His father was also an alcoholic who beat him with a belt for leaving a key in the door and beat Oaks several times a week after he had been drinking.

13

While evidence in mitigation may have been sufficient to persuade the trial judge that Petitioner did not deserve the death penalty, the Court cannot find that it would have done enough to outweigh the substantial evidence of the exceptionally brutal and heinous nature of the crime he committed.  The abuse was inflicted by a grown, 164-pound man against a three-year-old child weighing 35 pounds.  It was not a single blow or even a single incident of violence; rather, it was repeated, prolonged, tortuous, and seemingly without remorse.  After becoming aware that the child was unresponsive and turning blue, there was still inconceivable delay before getting him medical attention, and even then, Oaks just left the house.  After considering the totality of the aggravating and mitigating evidence, the Court cannot find any reasonable probability that the mitigating evidence would have produced a sentence other than death or life imprisonment.  As Petitioner's sentence was commuted to natural life, he has failed to demonstrate actual prejudice as a result of counsel's deficient performance, and this claim also fails.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing § 2254 Proceedings states "district court must issue or deny a certificate of appealability (CA) when it enters a final order adverse to the applicant." To obtain a CA, a petitioner must make a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  When a district court has rejected the constitutional claim on the merits, § 2253(c) requires the petitioner demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When the court denies a habeas petition on procedural grounds without reaching the underlying constitution claim, a CA should be issued only when the petitioner shows "that jurists

would find it debatable whether the petition states a valid claim of a constitutional right and jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

All of Petitioner's arguments were either procedurally defaulted or denied based on clearly established precedent. Petitioner did not raise any arguments that jurists of reason would find debatable. Accordingly, the Court declines to issue a certificate of appealability.

**CONCLUSION**

For the reasons set forth above, the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 [2] is DENIED.

ENTERED this 10th day of August, 2015.


s/ James E. Shadid          
James E. Shadid
Chief United States District Judge

15